```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
SECURITIES AND EXCHANGE COMMISSION,      :
                    Plaintiff,           :
                                         :   98 Civ. 7347 (DLC)
            -v-                          :
                                         :   OPINION & ORDER
EURO SECURITY FUND, et al.,              :
                    Defendants.          :
-----------------------------------------X
```

Appearances:

For plaintiff:

Gregory N. Miller
Rosemary A. Filou
Securities & Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030A

Robert B. Blackburn
Securities & Exchange Commission
3 Word Financial Center (Room 4300)
New York, NY 10281-1022

DENISE COTE, District Judge:

Over ten years ago, the United States Securities and Exchange Commission ("S.E.C.") filed this lawsuit, which includes allegations that several Dutch nationals committed insider trading in violation of United States securities laws. On March 23, 2009, the S.E.C. moved for an order entering default judgments against defendants H.J.M. de Boer and Franck Hakkert and striking their responsive pleadings, based on Boer's

and Hakkert's failure to participate in discovery. The motion is unopposed. For the reasons stated below, it is granted.

BACKGROUND

The facts are taken from the Modified First Amended Complaint, except where noted. Between September 10, 1998 and October 13, 1998, seven Dutch nationals purchased shares and options in Elsag Bailey Process Automation, N.V. ("Elsag"). Elsag's stock trades on the New York Stock Exchange, and options on the stock of Elsag traded on the Pacific Exchange beginning in late July 1998. On October 14, 1998, ABB Asea Brown Boveri ("ABB") announced a tender offer for Elsag. Hakkert and DeBoer, Amsterdam residents and neighbors, purchased 90 Elsag Nov 22.5 call options and 20 Elsag Nov. 22.5 call options, respectively, on October 13, 1998. Hakkert's brother worked at Elsag, and de Boer bought his call options at Hakkert's suggestion. 15 Elsag Nov. 22.5 call options were purchased that same day by other defendants in this action; together, the 125 call options purchased that day represented 100% of the trading volume for that series of call options. The day after Elsag announced the tender offer, its shares rose from $19-$21 per share to $36 per share.

The S.E.C.'s complaint, originally filed on October 19, 1998, amended on November 17, 1998, modified on July 26, 2007, alleged that Hakkert and de Boer bought call options using

2

material nonpublic information, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; Section 14(e) of the Exchange Act, 15 U.S.C. § 78(n)(e); and Rule 14e-3 promulgated thereunder, 17 C.F.R. § 240.14e-3.

The complaint alleged that personal jurisdiction over the foreign defendants exists because the transactions made use of a national securities exchange. An Opinion and Order of February 17, 1999 found that this was a sufficient basis to exercise jurisdiction over two other foreign defendants in the action, Mario Merello and Fabrizio Pessina. S.E.C. v. Euro Sec. Fund, No. 98 Civ. 7347 (DLC), 1999 WL 76801, at *4 (S.D.N.Y. Feb. 17, 1999) (the "February 17, 1999 Opinion"). The February 17, 1999 Opinion held that trading Elsag shares provided sufficient minimum contacts with the United States to confer personal jurisdiction because "Elsag's stock is registered under Section 12(b) of the Exchange Act and . . . its stock trades exclusively on the NYSE." Id. at *3.

Following a hearing on November 10, 1998, an Order for a Preliminary Injunction and Asset Freeze was entered against the defendants, including de Boer and Hakkert. Hakkert and de Boer then submitted four documents to the S.E.C. which the S.E.C. has construed as responsive pleadings and which it moves to strike

3

by the instant motion.  On December 28, 1998, a letter from de Boer was docketed, in which he attempts to explain his purchase of Elsag options.  The S.E.C. also possesses two documents captioned as "Answer to the First Amended Complaint," one from de Boer and one from Hakkert, which are dated February 17, 1999.  Neither document was filed with the court.  De Boer, Hakkert, and a third defendant also submitted a letter explaining their purchase of Elsag options, which was docketed on March 19, 1999.  The letter stated that they wished to amend their "answers" of February 17 to add that "[t]he defendants put their fullest trust in American jurisdiction, but do not recognize the judgement [sic] in a case against defendants of a foreign nation."

On November 22, 1999, proceedings against the Dutch defendants were stayed.  The stay was lifted on December 1, 2006, and the S.E.C. was instructed to serve a copy of the Order lifting the stay on the Dutch defendants and confer with the defendants regarding a proposed discovery schedule.  Pursuant to the Order, the S.E.C. served de Boer and Hakkert with a copy and attempted to confer with them.  An Order of January 31, 2007 again directed the parties to confer regarding a schedule for initial disclosures, discovery, and other pretrial procedures.  The Order also directed the S.E.C. to serve the January 31 Order and serve the December 1 Order on the Dutch defendants to the

4

extent that it had not already done so. While the S.E.C. attempted to meet and confer with the defendants, their Dutch counsel informed the S.E.C. in a letter of March 5, 2007 that they refused to participate in the litigation. The S.E.C. submitted letters to the Court on March 14 and March 16 detailing its efforts to confer with the defendants.

On March 20, 2007, an Order issued scheduling a pretrial conference for May 25, 2007 and required the S.E.C. to serve copies of the Order on the Dutch defendants. The S.E.C. complied, and a declaration from its Dutch counsel filed on May 21, 2007 attested to service.

Neither de Boer nor Hakkert appeared at the May 25, 2007 conference, nor did they make arrangements to appear by telephone. A pretrial scheduling order issued the same day (the "May 25 Order"). As the May 25 Order directed, the S.E.C. served defendants with copies of both the Order and a transcript of the conference.

The May 25 Order required the parties to serve their Federal Rule of Civil Procedure 26(a) initial disclosures on or before July 2, 2007. The S.E.C. did not receive initial disclosures from de Boer and Hakkert, and sent their counsel a letter on August 9, 2007 informing him of the failure to make the required disclosures. De Boer and Hakkert did not

5

subsequently provide disclosures or explain their failure to comply with the July 2 deadline.

De Boer and Hakkert also did not respond to the S.E.C.'s timely served requests for admission, issued on February 4, 2008 pursuant to Rule 34, Fed. R. Civ. P.  As with the initial disclosures, when the defendants did not respond to the S.E.C.'s requests for admission, the S.E.C. sent the defendants a letter via their Dutch counsel on March 31, 2008, informing them of their failure to respond.  Again, the S.E.C. received no response.

The S.E.C. served a request for production of documents on March 28, 2008, and received nothing in response.  In a June 16 letter to defendants' counsel, the S.E.C. requested that defendants participate in a conference call to discuss the discovery documents sent by the S.E.C. and defendants' obligations under the scheduling order.  The S.E.C. propounded its first set of interrogatories, pursuant to Fed. R. Civ. P. 33, on July 1, 2008, and received no response.[1]  The S.E.C. followed up in a letter of July 10, reminding defendants that they had not provided Rule 26(a) initial disclosures and had failed to respond to the S.E.C.'s requests for admissions and documents.  The letter also requested that defendants contact

---

[1] The S.E.C. enclosed copies of Rule 33, Fed. R. Civ. P., S.D.N.Y. Local Rule 33.1, and 15 U.S.C. § 78c with its interrogatories.

6

the S.E.C. or provide a way for the S.E.C. to contact them to confer regarding the outstanding discovery request pursuant to Rule 37(a)(1), Fed. R. Civ. P.[2]  Defendants were unresponsive.

On October 17, 2008, the S.E.C. sent defendants' Dutch counsel copies of the instant motion in draft form, along with a proposed order and supporting exhibits and warned defendants that it would seek a default and move to strike defendants' responsive pleadings unless they responded.  The defendants did not respond.  The S.E.C. submitted a status letter on January 22, 2009, in which it requested authority to file its motion.  A memo endorsement of January 23 granted its request.

Consequently, on March 26, 2009, the S.E.C. filed this motion to strike the submissions from de Boer and Hakkert that it deemed "responsive pleadings" and requesting that a default against these two defendants be entered for their failure to cooperate in discovery.  A scheduling Order issued on April 21, requiring Hakkert and de Boer to file oppositions by May 22, 2009 and setting a June 5 deadline for the S.E.C. to file any reply.

Hakkert and de Boer did not file an opposition.  On May 20, they jointly sent a letter to the S.E.C. expressing an interest in settling the case.  In a letter of June 19, the S.E.C.

---

[2] The S.E.C. states that all requests prior to its July 10, 2008 letter were ignored, but it does not describe what response, if any, it received to the July 10 letter.

7

notified the Court that it had been in contact with de Boer but had not succeeded in contacting Hakkert.  It also stated that it planned to send both defendants settlement documents in Dutch and English.  The memo endorsement on the letter required the S.E.C. to submit a status letter by September 11.

On July 27, Hakkert wrote a letter declining to sign a settlement document and asserting that "I do not believe any of my actions have in any way created American jurisdiction."  On August 10, the S.E.C. wrote a letter stating that de Boer had sent a letter refusing to settle the day after Hakkert's July 27 letter had declined a settlement.  The S.E.C. requested that consideration of its March 26 motion not be delayed on account of a possible settlement between the parties.  Accordingly, the merits of its request will now be addressed.

## DISCUSSION

Rule 16(f), Fed. R. Civ. P., permits a court "upon motion or the [court's] own initiative," to grant sanctions if a party "fails to appear at a scheduling or other pretrial conference" or "fails to obey a scheduling or pretrial order."  Rule 16(f) explicitly permits sanctions under Federal Rule of Civil Procedure 37(b)(2)(A)(ii)-(iv), which authorizes the court to "prohibit[] the disobedient party from supporting or opposing designated claims or defenses" or "strik[e] pleadings in whole or in part."  Rule 37(b) allows a court to impose a range of

8

sanctions in the event that a party fails to comply with a court order.  In addition to the sanctions authorized by 37(b)(2)(A)(ii)-(iv) described above, a court may also render a default judgment against the disobedient party.  Fed. R. Civ. P. 37(b)(2)(A)(vi).  Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, "if a party fails to obey a discovery order, the court 'may make such orders in regard to the failure as are just.'"  Residential Funding Corp. v. Degeorge Fin. Corp., 306 F.3d 99, 106 (2d Cir. 2002) (citing Fed. R. Civ. P. 37(b)(2)). "Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction." Id. at 107.

Rules 37(c) and 37(d), Fed. R. Civ. P., are also implicated by defendants' actions here.  Rule 37(c) authorizes courts to impose the sanctions listed under Rule 37(b)(2)(A)(i)-(vi) "if a party fails to provide information or identify its witness as required by Rule 26(a)."  Rule 37(d), Fed. R. Civ. P., provides that if a party fails to serve answers to interrogatories, or respond to requests for inspection, a court has the discretion to, among other things, prohibit that party from introducing designated matters in evidence, and/or render a judgment by default against the disobedient party.  If the responses are insufficient, the propounding party should seek a court order

compelling complete discovery.  Flaks v. Koegel, 504 F.2d 702, 706 n.2 (2d Cir. 1974).  If there is a "serious or total failure to respond" to the requests, however, striking the delinquent party's pleadings is appropriate.  Id.

"[D]istrict courts possess wide discretion in imposing sanctions under Rule 37."  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007) (citation omitted). "Strong public policy favors resolving disputes on the merits . . . .  Although courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001) (citation omitted).  The Second Circuit has emphasized the importance it places on a party's compliance with discovery orders and "warned that a party who flouts such orders does so at his peril."  Sieck v. Russo, 869 F.2d 131, 133 (2d Cir. 1989) (citation omitted).

Like a dismissal of a plaintiff's case, the entry of a default "is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant."  Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (citation omitted).  While Rule 37 allows for less harsh remedies besides the entry of default, "the most severe in the

spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Sieck, 869 F.2d at 134 (citation omitted). The imposition of severe sanctions is necessary to avoid a situation where courts "encourage dilatory tactics, and compliance with discovery orders . . . come[s] only when the backs of counsel and the litigants were against the wall." Id. (citation omitted). In Sieck, the Second Circuit upheld the district court's decision to enter a default after the defendants failed to appear at their depositions. Id.

A court exercising its discretion to impose sanctions such as the entry of default should consider

> (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.

Agiwal, 555 F.3d at 302 (citation omitted). Rule 37 requires that "the severity of sanction must be commensurate with the non-compliance." Shcherbakovskiy, 490 F.3d at 140 (citation omitted). Entry of a default "is appropriate not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such

11

conduct in the absence of such a sanction." Agiwal, 555 F.3d at 303 (citation omitted).

Each of the four factors militates in favor of ordering a default and striking defendants' responsive pleadings. The defendants' non-compliance began with their March 5, 2007 letter stating that they did not recognize American jurisdiction and refusing to participate in the litigation, and, except for their May 20, 2009 letters expressing an interest in settling, extends to the present day, stalling this litigation for two years. They did not attend the initial conference nor did they attempt to appear telephonically. They have flouted the discovery deadlines set by the May 25, 2007 Order. They have offered no reason for their repeated refusal to respond to the S.E.C.'s discovery requests and attempts to confer. At each juncture of the discovery process, where defendants failed to comply with a court order or discovery request, the S.E.C. contacted them again to remind them of their duties, enclosing copies of the appropriate Federal Rules where appropriate.

The S.E.C. also warned de Boer and Hakkert repeatedly of the consequences of non-compliance. For example, the S.E.C. sent them the motion in October 2008, three months before it notified the Court that it sought entry of a default judgment and would move to strike the responsive pleadings. They did not respond. Neither did they ever oppose the S.E.C.'s motion, even

12

after they declined to settle in July 2009. They should not be permitted to stand on their denials in their responsive pleadings indefinitely while refusing to take part in the litigation of the parties' positions.

That said, while the S.E.C. has warned Hakkert and de Boer that it intended to seek sanctions against them for refusing to comply with discovery requests, Hakkert and de Boer have not yet been warned by the Court that their conduct constitutes sanctionable behavior. "Rule 37(a) clearly envisions some judicial intervention between a discovery request and the imposition of sanctions." Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991) ("Daval Steel"). The judicial intervention "serves to alert the offending party to the seriousness of its noncompliance and permits judicial scrutiny of the discovery request. The court's order also functions as a final warning that sanctions are imminent, and specifically informs the recalcitrant party concerning its obligations." Id. at 1365. In Daval Steel, the Court of Appeals held that a trial subpoena served by one party upon the other was not "an order to provide or permit discovery" within the meaning of Rule 37(b)(2) and noncompliance with which could not justify the imposition of sanctions. Id. While an order compelling discovery specifically pursuant to Rule 37(a) need not be issued to meet

13

the "judicial intervention" requirement, a court has authority to impose Rule 37(b) sanctions only "[p]rovided that there is a clearly articulated order of the court requiring specified discovery." Id. at 1363.

None of the scheduling orders issued in this matter warned de Boer and Hakkert of the risks of non-compliance, nor have they received a warning in response to any status letters submitted in this case. The question is thus whether "there is a clearly articulated order of the court requiring specified discovery" with which de Boer and Hakkert failed to comply. Id.

There are several. Hakkert and de Boer refused to comply with the Orders of December 1, 2006 and January 31, 2007, which required that they confer with the S.E.C. to develop a discovery schedule.[3] The March 20, 2007 Order required Hakkert and de Boer to appear at the May 25, 2007 conference. Hakkert and de Boer were absent from the conference without excuse. The Order of May 25, 2007 set forth certain deadlines in the case, including the July 2, 2007 deadline for the exchange of initial disclosures pursuant to Rule 26(a)(1), Fed. R. Civ. P., that the defendants did not meet.

---

[3] The S.E.C. sent a letter on March 14, 2007 describing the results of its service of these two documents, and stating that de Boer and Hakkert had responded that they refused to participate in the litigation.

14

Returning to the four factors most recently articulated in Agiwal, 555 F.3d at 302, the analysis, when limited only to the failure to appear at the initial conference, the refusals to meet and confer, and the failure to provide initial disclosures, leads to the same result. The non-compliance was willful, given the purported refusal to accept American jurisdiction. Lesser sanctions are unlikely to be efficacious given defendants' repeated and categorical refusal to participate in the litigation. The duration of non-compliance remains over two years, and the Court's orders, requiring the actions that Hakkert and de Boer declined to undertake, provide sufficient warning under the standard articulated in Daval Steel. The failure to comply with a scheduling order, such as the May 25, 2007 Order, moreover, is grounds alone under Rule 16(f), Fed. R. Civ. P., for the imposition of the Rule 37(b) sanctions that the S.E.C. requests. Hernandez, 116 F.3d at 40.

In the words of the Deval Steel court,

> [t]he discovery provisions of the Federal Rules of Civil Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy. It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party seeks to frustrate this design by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.

15

Daval Steel, 951 F.2d at 1365.  At this point, defendants' utter refusal to participate in the litigation (aside from a brief window of time in which they contemplated settlement), and their defiance of several court orders have frustrated all attempts to resolve this already aged case for several years.  The sanctions that the S.E.C. requests, while severe, are appropriate in this case.  The SEC has shown that these two defendants have no intention of participating in discovery and that further orders to do so would yield no different result.

Construing Hakkert's July 27 letter liberally, it raises a single objection to the entry of default: an argument that a United States court lacks personal jurisdiction over him.  This argument is meritless, and was rejected in the February 17, 1999 Opinion following a motion to dismiss filed by two other foreign defendants.  Additionally, a party "is deemed to waive lack of personal jurisdiction by not properly asserting it in a timely motion or pleading."  "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 123 (2d Cir. 2008).  If the parties believed that jurisdiction did not exist, the proper method to raise that objection was to move to dismiss the complaint, not to simply refuse to participate in the litigation or even confer with opposing counsel.[4]

---

[4] Moreover, both Hakkert and de Boer arguably acknowledged in the answers submitted to the S.E.C. that United States courts may

16

CONCLUSION

The S.E.C.'s March 23, 2009 motion to strike de Boer's and Hakkert's responsive pleadings and enter a default against them is granted. A separate Order containing the default judgment shall be filed today.

SO ORDERED:

Dated:   New York, New York
         August 27, 2009

                                     _____
                                            DENISE COTE
                                     United States District Judge

---

exercise jurisdiction over the S.E.C.'s claims, stating that "the parties involved realize that the S.E.C. has presented sufficient common ground with American society for the American magistrate to accept jurisdiction." What they contested was the enforceability of any judgment against them in the Netherlands. The statement added in their March 19, 1999 letter (stating that they would not recognize a judgment rendered by an American court against a foreign defendant) similarly quarreled with the enforceability of a judgment, rather than the American courts' jurisdiction.

17

COPIES SENT TO:

**Robert Blackburn**
**Greg Miller**
**Rosemary A. Filou**
Securities and Exchange Commission
Northeast Regional Office
3 World Financial Center, Room 4300
New York, NY 10281

**Daan Doorenbos, Esq.**
Stibbe Amsterdam
Strawinskylaan 2001
1070 AP Amsterdam
THE NETHERLANDS

PLEASE IMMEDIATELY SEND COPIES TO ALL COUNSEL